UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                    Plaintiff,

v.                                                                    Criminal Action No. 3:15-cr-99-DJH

CHRISTOPHER A. MATTINGLY,                                                                Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Christopher Mattingly has filed a motion to suppress evidence obtained through wiretaps in this drug-trafficking case, arguing that the wiretaps were not properly authorized and were unnecessary.[1] (Docket No. 27) The United States, which intends to utilize evidence derived from only one of the five wiretaps originally at issue, maintains that the wiretap and underlying affidavit satisfy the statutory requirements for authorization and necessity. (D.N. 63, 83) For the reasons discussed below, the motion to suppress will be denied.

**I.    BACKGROUND**

Mattingly was initially the only defendant in this case, charged with one count of conspiracy to distribute 1000 kilograms or more of marijuana. (D.N. 1, PageID # 1) On February 17, 2016, the grand jury returned a superseding indictment naming five additional defendants. (D.N. 29) The three-count superseding indictment alleges that Mattingly and the other defendants conspired to distribute marijuana and to commit money laundering and that Mattingly and others conspired to possess with the intent to distribute methamphetamine. (*Id.*, PageID # 734-36)

---

[1] Defendants Shewmaker, Howard, and Whitfill have filed their own motions to suppress or motions to join Mattingly's motion. (*E.g.*, D.N. 70, 71, 72, 93) As these motions either are not yet ripe or only recently became ripe, they will be addressed in a separate opinion.

At least some of the government's evidence against Mattingly was obtained via wiretaps approved by the Superior Court for the County of Riverside, California.  The first three wiretap applications, dated March 11, April 7, and April 8, 2014, were submitted by Riverside Assistant District Attorney Jeffery Van Wagenen, who was authorized by then-District Attorney Paul Zellerbach to act as DA in his absence.  (D.N. 27-5, 27-6, 100-1)  Assistant DA Creg Datig submitted the fourth application on October 27, 2014, also on Zellerbach's behalf.  (D.N. 27-7)  The fifth application was submitted February 19, 2015, by Assistant DA John Aki on behalf of DA Michael Hestrin, Zellerbach's successor.  (D.N. 27-8)

Mattingly asserts that all wiretap evidence and evidence derived therefrom should be suppressed on either of two grounds: first, that the wiretaps were not properly authorized because the applications were not submitted by the district attorney himself or in his absence, and second, that the wiretaps were not necessary because they were issued before normal investigative techniques had been attempted or exhausted.  (D.N. 27, PageID # 83)  The Court heard oral argument on Mattingly's motion to suppress on May 10, 2016.  (D.N. 76)  At the commencement of the hearing, the United States advised the Court that it intended to use evidence from only one of the five wiretaps, Wiretap No. 14-120 Extension 1 ("Extension 1"), which was applied for and approved on April 8, 2014.  The parties submitted post-hearing briefs reflecting this narrowed scope and further addressing the issue of necessity under 18 U.S.C. § 2518.  (D.N. 83, 84)

## II.     ANALYSIS

The government's announcement that it would only use evidence from Extension 1 resulted in slight changes to the parties' arguments.  The United States now urges the Court to limit its analysis to Extension 1, asserting that Extension 1 "stands alone," "separate and independent" from any other wiretap.  (D.N. 83, PageID # 1155)  Mattingly, on the other hand,

maintained during oral argument that Wiretap No. 14-120 was invalid and that any wiretap thereafter, including Extension 1, was likewise defective. The Court concludes that both Wiretap No. 14-120 and Extension 1 are valid. As a result, suppression is not required.

### A. Standard of Review

For purposes of a motion to suppress, the burdens of production and persuasion are on the defendant seeking suppression. *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) (citing *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998); *United States v. Giacolone*, 853 F.2d 470, 482 (6th Cir. 1988)). In considering the motion, the Court must view the evidence "in the light most favorable to the government," *id.* (citing *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003)), and presume the validity of the wiretap order, giving "great deference to the determinations of the issuing judge." *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007) (quoting *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000)). The good-faith exception does not apply to wiretap orders. *Id.* at 711.

### B. Extension 1

Wiretap No. 14-120 authorized interception of four telephones, designated as Target Telephone Numbers ("TT #") 9, 10, 11, and 12. (D.N. 27-5, PageID # 454-55) Extension 1 permitted continued interception of only TT #11. (D.N. 100-1, PageID # 1374) In the United States' view, Extension 1 must be considered alone. It is designated as an extension of Wiretap No. 14-120, the government argues, only because TT # 11 "was also listed in 14-120, along with several others which were allowed to lapse." (D.N. 83, PageID # 1155) Yet this is the very definition of an extension: a wiretap order that "authorizes continued interception of the same

location or communications facility specified by the prior order."[2]  *Hermanek*, 289 F.3d at 1086; *see also United States v. Vastola*, 915 F.2d 865, 874 (3d Cir. 1990); *United States v. Ojeda Rios*, 875 F.2d 17, 21 (2d Cir. 1989), *vacated on other grounds*, 495 U.S. 257 (1990).

Mattingly makes no specific challenge to Extension 1, either in his original motion to suppress (which did not mention the extension) or his post-hearing brief.  Instead, he simply claims that Extension 1, "like every other wiretap application or extension associated with this case[,] . . . is generalized and boilerplate" and thus was unnecessary.[3]  (D.N. 84, PageID # 1165) He further asserts that Extension 1 "is the unlawful and inadmissible fruit of [Wiretap No.] 14-120."

Notwithstanding the government's position that Extension 1 stands alone, the validity of an extension may depend on the validity of the original wiretap order.  Title 18, section 2518 of the United States Code provides:

> Any aggrieved person . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that--
> (i)   the communication was unlawfully intercepted;
> (ii)  the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a); *see also* § 2515 ("Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any

---

[2] The term "communications facility" includes cellular phones.  *United States v. Hermanek*, 289 F.3d 1076, 1086 n.3 (9th Cir. 2001).

[3] Mattingly does not contend that Extension 1 was unauthorized, presumably because the United States has presented evidence that Zellerbach was in fact away from the office on the date of the Extension 1 application.  (*See* D.N. 63-5, PageID # 897)  In any event, the Court's analysis of the authorization issue applies equally to Extension 1.  *See infra* Part II.C.1.

4

court . . . if the disclosure of that information would be in violation of this chapter."). Communications intercepted pursuant to a wiretap extension constitute "evidence derived" from the original order where the extension application relies on information obtained through the initial wiretap. *See United States v. Giordano*, 416 U.S. 505, 532 (1974).

Here, the application for Extension 1 contained descriptions of calls intercepted pursuant to Wiretap No. 14-120.[4] Without this information, the extension could not have been granted, as § 2518(1)(f) requires that an application for extension include a statement of "either the results obtained under the prior order or an explanation for the absence of such results." *Id.* Evidence from Extension 1 is therefore "evidence derived" from Wiretap No. 14-120, and the suppression question turns in part on the validity of Wiretap No. 14-120.[5] *See id.* at 533.

C. **Wiretap No. 14-120**

Mattingly argues that Wiretap No. 14-120 is invalid on two grounds: lack of proper authorization and lack of necessity. Neither argument is persuasive.

---

[4] A comparison of the application for Wiretap No. 14-120 to the Extension 1 application reveals that the latter describes two calls intercepted on TT #11 following the 14-120 application, on March 21, 2014. (*Compare* D.N. 101-1, PageID # 1436-39, *with* D.N. 101-2, PageID # 1481-86) While the introductory paragraph for this section states that the communications were intercepted pursuant to Wiretap No. 14-11, that wiretap (which was issued on January 14, 2014, and not extended) had expired by March 21. (D.N. 101-2, PageID # 1481) *See* Cal. Penal Code § 629.58 (providing that no wiretap order shall authorize interception longer than thirty days). It seems readily apparent that the March 21 calls were intercepted under Wiretap No. 14-120, which, according to Extension 1's list of prior applications, was the only wiretap order in effect with regard to TT #11 at that time. (D.N. 101-2, PageID # 1477-78) *See* 18 U.S.C. § 2518(1)(e) (wiretap application must contain "a full and complete statement of the facts concerning all [known] previous applications" for wiretaps "involving any of the same persons, facilities, or places specified in the application"); Cal. Penal Code § 629.50(a)(6) (same).

[5] To the extent Mattingly challenges the necessity of the Extension 1 application, that argument will be addressed in Part II.C.2 below.

5

### 1. Authorization

Pursuant to 18 U.S.C. § 2516(2),

> [t]he principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made[.]

The Supreme Court has explained that this provision was intended to limit wiretap-application authority "to those responsive to the political process." *Giordano*, 416 U.S. at 520.

The relevant state statute is California Penal Code § 629.50, which provides:

> Each application for an order authorizing the interception of a wire or electronic communication shall be made in writing upon the personal oath or affirmation of the Attorney General, Chief Deputy Attorney General, or Chief Assistant Attorney General, Criminal Law Division, or of a district attorney, *or the person designated to act as district attorney in the district attorney's absence*, to the presiding judge of the superior court or one other judge designated by the presiding judge.

Cal. Penal Code § 629.50(a) (emphasis added).

In a memorandum to "Wiretap Staff" dated January 2, 2014 (prior to the application for Wiretap No. 14-120), Riverside DA Zellerbach stated:

> In my absence, Assistant District Attorney Jeffrey A. Van Wagenen, Jr., is my designee and is authorized to make all decisions necessary to the administration of the District Attorney's Office. If he is unavailable, Assistant District Attorney Creg G. Datig is authorized to act on behalf of the District Attorney's Office.

(D.N. 63-1, PageID # 884) The subject of the memo was "Designation Pursuant to Penal Code section 629.50." (*Id.*)

As an initial matter, the Court will address an argument raised by Mattingly's counsel during oral argument, namely that California Penal Code § 629.50 is preempted by 18 U.S.C. § 2516. Counsel was unable to cite any authority for this position. Moreover, the Court notes that the Ninth Circuit rejected a similar argument in *United States v. Perez-Valencia*, 727 F.3d 852 (9th Cir. 2013), a case cited by both Mattingly and the United States. There, the defendant's "primary contention . . . [was] that the language 'the principal prosecuting attorney' found in § 2516(2) cannot and should not be read to include a state assistant district attorney, whether or not that assistant has been duly designated to act in the absence of the district attorney." *Id.* at 854. The court disagreed, pointing to § 2516's provision regarding authorization by state statute. *Id.* at 854-55 ("[Section] 2516(2) also says with respect to the language Perez-Valencia highlights, 'if such attorney is authorized by a statute of that State to make application to a State court judge . . . for an order authorizing or approving the interception of wire, oral, or electronic communications.'" (omission in original) (quoting § 2516(2))). That provision "necessarily require[d] an analysis of the applicable state wiretap statute," i.e., California Penal Code § 629.50. *Id.* at 855. The court further noted that § 2516's legislative history revealed Congress's intent to leave delegation by district attorneys to state law. *Id.* (citing *United States v. Fury*, 554 F.2d 522, 527 n.4 (2d Cir. 1977)). In light of the Ninth Circuit's discussion in *Perez-Valencia* and in the absence of any applicable authority indicating that California may not allow designation of the power to request wiretaps, the Court declines to hold that § 629.50 is preempted by § 2516.

Much of the parties' argument revolves around *Perez-Valencia*. In *Perez-Valencia*, as in this case, the defendant sought suppression of evidence obtained through a wiretap applied for by an assistant district attorney who had been authorized to do so in the DA's absence. *See* 727

F.3d at 854-55. The application was submitted while the DA "was out of his office . . . attending to an ill family member who had just undergone surgery for a serious health condition." *Id.* at 854. The Ninth Circuit initially remanded the case for determination of whether the assistant DA who submitted the application—one of three previously designated by the DA "to act in [his] absence"—was "duly acting *for all purposes* as *the* 'principal prosecuting attorney' of" the county. *Id.* at 855 (quoting 18 U.S.C. § 2516(2)). On remand, the district court concluded that the assistant DA who applied for the wiretap was the only person authorized to do so and had authority to exercise all the powers of the office. *See United States v. Perez-Valencia*, 744 F.3d 600, 603 (9th Cir. 2014). The Ninth Circuit agreed that the assistant DA "was functioning as the principal prosecuting attorney for all regular decisions the office made, without exception," thus satisfying 18 U.S.C. § 2516(2) and California Penal Code § 629.50. *Id.* at 604. The denial of Perez-Valencia's motion to suppress was therefore affirmed. *Id.*

      Mattingly argues that *Perez-Valencia* requires suppression here because in this case, unlike *Perez-Valencia*, the DA was not "truly absent and unavailable." (D.N. 27, PageID # 93) In support, Mattingly points to a *USA Today* article in which Zellerbach was quoted as saying he "didn't have time to review all of" the county's wiretap applications—"[n]o way." (D.N. 24-4, PageID # 438) Zellerbach was not "absent," Mattingly contends; rather, he "abdicated his legal responsibility to oversee the applications for wiretaps" by assigning that duty to an assistant. (D.N. 27, PageID # 93)

      The United States rejects Mattingly's interpretation of *Perez-Valencia* as requiring a finding of absence or unavailability, noting that "the definition of 'absence' was not an issue under review" in that case. (D.N. 63, PageID # 864) Instead, the government observes, the Ninth Circuit was only concerned with "the scope of the designation in the DA's absence." (*Id.*)

In the United States' view, Mattingly is attempting to shift his burden of proof to the government. (*Id.*, PageID # 866-67) Mattingly confirms this in his reply, asserting that "to sustain the United States' burden of proving Zellerbach's 'absence,'" it would have to show that Van Wagenen "was in fact the district attorney for all purposes throughout 2014." (D.N. 64, PageID # 910)

The United States is correct that the *Perez-Valencia* court did not define "absence" or impose any requirements with respect to that element of the statute. Rather, the Ninth Circuit merely quoted the district court's findings of fact as to why and how long the DA was out of the office. *See* 744 F.3d at 601, 603. Moreover, although an evidentiary hearing was required in *Perez-Valencia* to determine the scope of the assistant DA's authority, the designation in this case expressly stated that Van Wagenen was "authorized to make all decisions necessary to the administration of the District Attorney's Office" in Zellerbach's absence. (D.N. 63-1, PageID # 884) In *Perez-Valencia*, by contrast, the designation could have been interpreted as authorizing the assistants only to apply for wiretaps, not to perform any other duties of the office. *See* 727 F.3d at 854 (quoting DA's internal memorandum designating "the following individuals to act in [the DA's] absence," "pursuant to [California] Penal Code section 629.50(a)"). In short, *Perez-Valencia* offers little guidance as to the meaning of the word "absence" in § 629.50 because that was not the question before the court.

The issue of absence under § 629.50 has arisen in two district-court cases, *United States v. Cosme*, No. 10CR3044 WQH, 2011 U.S. Dist. LEXIS 94742 (S.D. Cal. Aug. 24, 2011), and *United States v. Ruiz*, 09 Cr. 719(DAB), 2010 U.S. Dist. LEXIS 123991 (S.D.N.Y. Nov. 19, 2010). In *Cosme*, the Southern District of California denied the defendant's motion to suppress where the record established that the assistant DA who applied for the wiretaps in question "was

9

authorized to act in the absence of [the DA]" and was "second in command, and serve[d] at the pleasure of the District Attorney who is responsive to the political process"; that "there was no blanket designation" of wiretap authority; and that "the District Attorney determined that designation in her absence was necessary as authorized by state law."  2011 U.S. Dist. LEXIS 94742 at *19; *see id.* at *20.  The *Cosme* decision is of limited utility here, however, as the court did not delve into whether the DA was actually absent, nor did it attempt to define the term "absence."  Instead, the court accepted the DA's declaration that on the dates of the wiretap applications, she "was within the County of San Diego, but absent and unavailable for the purpose of reviewing and applying for the wire interceptions."  *Id.* at *18.

*Ruiz*, cited by the United States in its response, is more helpful.  (*See* D.N. 63, PageID # 866-67)  In *Ruiz*, as in this case, the defendant argued that "in order for [the] Assistant District Attorney . . . to be authorized to apply for a wiretap, the District Attorney must have been absent" and that the government was required to present proof of the DA's absence.  2010 U.S. Dist. LEXIS 123991 at *13.  The court rejected this argument, noting that "a designated official is 'presumed to have properly exercised' the power to apply for a wiretap 'unless the defendants offer evidence, apart from mere conjecture or speculation, to rebut this presumption.'"  *Id.* (quoting *U.S. v. Terry*, 702 F.2d 299, 310-11 (2d Cir. 1983)).  In the absence of any evidence that the assistant DA was not properly designated, the court declined to "impose a burden on investigative agencies or prosecutors . . . to prove they were absent when a designee acts on their behalf."  *Id.* at *13-14.

Here, Mattingly purports to have evidence showing that Van Wagenen was not properly authorized to apply for Wiretap No. 14-120.  He urges the Court to infer from the *USA Today* article that Zellerbach improperly designated his wiretap authority on a permanent basis.  (*See*

10

D.N. 27, PageID # 93-95)  Although a quote in a newspaper article typically constitutes double hearsay, *see Larez v. Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991), the Court may consider hearsay for purposes of a suppression hearing.  *United States v. Raddatz*, 447 U.S. 667, 679 (1980) (citations omitted) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); *see* Fed. R. Evid. 104(a) (in deciding preliminary questions of admissibility, "the court is not bound by evidence rules, except those on privilege").  Nevertheless, the Court must still determine whether the evidence presented is "competent and credible."  *United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012) (quoting *Fields v. Bagley*, 275 F.3d 478, 485 n.5 (6th Cir. 2001)).

The *USA Today* article does not show that Zellerbach was actually present and available on the dates of the wiretap applications at issue here, or that his designation of authority under § 629.50 was otherwise unlawful.  *Cf. Perez-Valencia*, 727 F.3d at 855 (indicating that assistant DA would have lacked statutory authority if designation were only for wiretap purposes or if others had concurrent authority).  Likewise, documents from *People v. Koan Lay*—which Mattingly offers to show that in a California state-court case involving questions as to whether a wiretap was properly authorized, the San Bernardino DA conceded the defendants' motion to suppress—are irrelevant to the wiretaps in this case.  (*See* D.N. 73, PageID # 1064 (stating Mattingly's intent to present as exhibits "Defendant Koan You Lay's Motion to Suppress Wiretap Evidence" and "Transcript of Oral Proceeding [in *Koan Lay*] whereby the People concede on this issue"))  Nor do statistics regarding the total number of wiretaps applied for by the Riverside County DA's office in 2014 provide information relevant to this particular case.  (*See id.*, PageID # 1065 (listing "United States Court's public record concerning Riverside

County, California's wiretap applications and applicants in 2014" as exhibit to be offered at suppression hearing))

The only evidence in the record specific to this case are excerpts from Zellerbach's electronic calendar for the dates of the wiretap applications. (D.N. 63-5) These are of little help given the accompanying affidavit by a DA office employee suggesting that the entries may be inaccurate.[6] (D.N. 63-6) For what they are worth, the calendar entries show breakfast, coffee, and lunch appointments and two short meetings on the date of the application for Wiretap No. 14-120; on the day the Extension 1 application was submitted, Zellerbach appears to have been away from the office. (*See* D.N. 63-5, PageID # 895, 897)

In its usual sense, the word "absence" means "[a] failure to appear, or to be available and reachable, when expected." *Black's Law Dictionary* (10th ed. 2014). Nothing in § 629.50 suggests a minimum amount of time a district attorney must be out of the office in order to be deemed absent; nor does the statute list permissible (or impermissible) reasons for absence. Contrary to Mattingly's suggestion, no "extreme circumstances" are required. (D.N. 27, PageID # 93) And it is Mattingly's burden to show that the wiretap application was invalid, not the other way around. *See Patel*, 579 F. App'x at 453. Because Mattingly has failed to present competent and credible evidence, as opposed to mere speculation, that Zellerbach was in fact available and reachable when Van Wagenen submitted the application for Wiretap No. 14-120 or Extension 1,

---

[6] The affidavit, by Riverside County Deputy District Attorney Kelli M. Catlett, states that Zellerbach "kept a personal physical calendar, which he solely maintained" and which is not in the office's possession; that "[a]ny changes or amendments to . . . Zellerbach's daily schedule that were not expressly communicated to his Executive Assistant would not be reflected in his electronic Outlook Calendar"; that "Zellerbach did not always communicate scheduling changes or conflicts to his Executive Assistant"; and that "Zellerbach is the only person who can authenticate the accuracy of either his electronic Outlook calendar or his physical personal calendar." (D.N. 63-6, PageID 901) The Court notes that personal or emergency situations such as the one in *Perez-Valencia*—as Mattingly describes them, "extreme circumstances"—would be unlikely to appear on a work calendar.

suppression is not warranted on the ground that the wiretaps were improperly authorized. *See Ruiz*, 2010 U.S. Dist. LEXIS 123991, at *13-14.

### 2. Necessity

Mattingly also contends that suppression is warranted because the wiretap applications do not meet the necessity requirement of 18 U.S.C. § 2518. (D.N. 27, PageID # 95-99) *See Rice*, 478 F.3d at 710 ("Because the necessity requirement is a component of Title III, and because suppression is the appropriate remedy for a violation under Title III, where a warrant application does not meet the necessity requirement, the fruits of any evidence obtained through that warrant must be suppressed."). Subsection (3)(c) of the statute provides that a wiretap may be authorized upon the judge's determination (among other factors) that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." To satisfy this provision, a wiretap application must contain "a full and complete statement" regarding the use or possible success of other investigative procedures. § 2518(1)(c). The requirement is meant to "assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). In other words, a wiretap generally should not be "the initial step in a criminal investigation." *Giordano*, 416 U.S. at 515.

According to Mattingly, the applications for Wiretap No. 14-120 and Extension 1 do not adequately establish necessity because they contain "boilerplate" assertions regarding the likely success of other investigative techniques. (D.N. 27, PageID # 95-98; D.N. 84, PageID # 1169-72) But while the affidavits do include some generic language, they do not consist solely of boilerplate. For example, the affidavits describe physical surveillance conducted in the case over a period of several months and state that while such surveillance would continue, it would not

13

reveal the scope of the conspiracy or the conspirators' identities and roles (stated objectives of the investigation).[7] (D.N. 101-1, PageID # 1431, 1445-49; D.N. 101-2, PageID # 1479, 1490-95) They further state that pen registers and telephone tolls, which were also employed, provided information that was useful but "insufficient as a basis for successful prosecution" because it did not include any details of the conspirators' involvement or narcotics transactions. (D.N. 101-1, PageID # 1451; D.N. 101-2, PageID # 1497) Finally, several search warrants—two listed in the first application, four more in the second—were obtained for target telephones but apparently not executed; the affidavits explain that serving search warrants too early would alert conspiracy members that an investigation was underway, likely cutting the investigation short before the full extent of the large-scale conspiracy could be determined. (D.N. 101-1, PageID # 1449-51; D.N. 101-2, PageID # 1495-97)

Other methods of investigation, including interviews, confidential informants, undercover agents, controlled purchases, closed circuit television monitoring, trash searches, financial investigation, and grand juries, are discussed but deemed too dangerous or unlikely to be useful based on the affiant's experience. (D.N. 101-1, PageID # 1442-45, 1451-55; D.N. 101-2, PageID # 1488-90, 1498-1501) The language regarding these other methods is, as Mattingly points out, the same in both affidavits. (*See* D.N. 84, PageID # 1165-67)

When seeking a wiretap, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Rice*, 478 F.3d at 710 (quoting *United States v. Alfano*, 838 F.3d 158, 163 (6th Cir. 1988)). Rather, the statute requires only "that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority" and inform the court of the

---

[7] The application for Extension 1 lists two dates on which surveillance was conducted after the 14-120 application was submitted. (D.N. 101-2, PageID # 1492-93)

reasons why those techniques "have been or will likely be inadequate." *Id.* (quoting *Alfano*, 838 F.3d at 163-64). The Court need not conduct "a hyper-technical and speculative analysis" of whether other investigative techniques might have been effective, but instead should examine the affidavit using "a practical and common sense" approach. *United States v. Wright*, 635 F. App'x 162, 167-68 (6th Cir. 2015) (quoting *United States v. Branch*, No. 5:12 CR 286, 2013 U.S. Dist. LEXIS 39817, at *33 (N.D. Ohio Mar. 13, 2013)). In so doing, the Court may rely on the affiant's opinions, based on his experience, that those techniques were "unlikely to succeed if tried." *Id.* at 167 (quoting *Landmesser*, 553 F.2d at 20).

The Sixth Circuit has observed that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002) (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977)). That is the case here, where drug transportation and sales appear to have been frequently coordinated via cellphone. (*See, e.g.*, D.N. 101-2, PageID # 1481-86) Moreover, given that the alleged conspiracy extended from California to at least Kentucky, the government likely could not have "uncovered the full scope of the conspiracy, especially not in a relatively safe manner, without the wiretaps." *Stewart*, 306 F.3d at 306.

An affidavit's partial reliance on "'statements that would be equally applicable to almost any . . . case [of this kind] does not render the affidavit insufficient' so long as there is 'information about particular facts . . . which would indicate that wiretaps are not being routinely employed as the initial step in criminal investigation.'" *Wright*, 635 F. App'x at 167 (omissions and alteration in original) (quoting *Landmesser*, 553 F.2d at 20). Here, the affidavits show that several other investigative techniques were utilized or seriously considered before Wiretap No.

14-120 was sought, and further investigation was conducted prior to application for Extension 1. This is all the caselaw requires. *See Rice*, 478 F.3d at 710.

The cases relied on by Mattingly—*Rice*, *United States v. Gonzalez*, 412 F.3d 1102 (9th Cir. 2005), and *United States v. Blackmon*, 273 F.3d 1204 (9th Cir. 2001)—are distinguishable. (D.N. 27, PageID # 96-97) In *Rice*, the Sixth Circuit agreed with the district court that an affidavit that merely contains "generalized and uncorroborated information" regarding why other techniques would be ineffective does not provide the "full and complete statement" required by § 2518. *Rice*, 478 F.3d at 711 (quoting *Stewart*, 306 F.3d at 304). Similarly, in *Blackmon*, the Ninth Circuit rejected an application premised solely on "boilerplate assertions . . . [that] would be true of most if not all narcotics investigations." 273 F.3d at 1210 (citing *United States v. Kalustian*, 529 F.2d 585, 588-89 (9th Cir. 1976)).

In both *Rice* and *Blackmon*, however, the affidavits' only substantive information regarding other investigative techniques was found to be false; purged of the false information, only boilerplate language remained. *See Rice*, 478 F.3d at 711; *Blackmon*, 273 F.3d at 1208-10. Here, although the affidavits in support of Wiretap No. 14-120 and Extension 1 do contain some general assertions regarding the potential value of non-wiretap techniques, they are not devoid of case-specific facts. And Mattingly does not contend that the affiant made any misstatements or omissions, including with respect to whether other methods would have been dangerous or ineffective. *Cf. Stewart*, 306 F.3d at 306 ("The [defendants] have provided no evidence to contest the government's contention that traditional methods would have been dangerous.").

The third case cited by Mattingly, *United States v. Gonzalez*, 412 F.3d 1102 (9th Cir. 2005), is likewise inapposite. The affidavit at issue in *Gonzalez* described only brief use of pen register and trap-and-trace analysis and an aborted attempt at physical surveillance. *See id.* at

16

1108. It did not adequately explain why further physical or video surveillance would have been unhelpful, nor did it explain why the use of confidential informants—which the affidavit stated had been successful in earlier stages of the investigation—was not attempted at the office where wiretapping was sought. *See id.*; *see also id.* at 1114. In light of the perfunctory investigation at that site and the limited discussion of potentially useful methods, the Ninth Circuit found "the affidavit's terse rejection of the possible productive use of grand jury subpoenas or search warrants" unacceptable. *Id.* at 1114.

Here, by contrast, there is no reason to believe that confidential informants could easily infiltrate the organization—on the contrary, the affidavits state that the group is close-knit and would be difficult to penetrate. (*See* D.N. 101-1, PageID # 1443; D.N. 101-2, PageID # 1488-89) Moreover, the preliminary investigation in this case was more extensive than that described in *Gonzalez*, entailing a lengthy (and continuing) period of physical surveillance in addition to the use of pen registers and telephone tolls. In short, the Court is satisfied that despite the affidavit's use of some "statements that would be equally applicable to almost any" drug-trafficking case, it contains sufficient "information about particular facts . . . which would indicate that wiretaps are not being routinely employed as the initial step in criminal investigation.'" *Wright*, 635 F. App'x at 167 (omission in original) (quoting *Landmesser*, 553 F.2d at 20). The Court therefore concludes that the wiretap applications meet § 2518's necessity requirement.

### III. CONCLUSION

While the sheer volume of wiretaps applied for and approved in Riverside County suggests that constitutional requirements cannot have been met, the legality of that system is not the issue before the Court. Mattingly has not presented evidence establishing that Van Wagenen

17

lacked authority to apply for Wiretap No. 14-120 or Extension 1, and the applications for those wiretaps satisfy the necessity requirement of § 2518.  Therefore, evidence obtained via the wiretaps need not be suppressed.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

    **ORDERED** that Mattingly's motion to suppress (D.N. 27) is **DENIED**.

July 1, 2016

**David J. Hale, Judge**
**United States District Court**